# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERRI L. KEITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-523-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Sherri L. Keith requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled.  For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born January 13, 1964, and was forty-nine years old at the time of the administrative hearing (Tr. 41). She completed four years of college, and has past relevant work as a teacher of the multi-handicapped (Tr. 30, 146). The claimant alleges that she has been unable to work since April 7, 2006, due to a hurt lower back and right hip and right leg, back injury, arthritis, depression, anxiety, permanent nerve damage, right hip problems, numbness in the right leg, right hip gives out without warning, and pain (Tr. 145).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on May 3, 2011. Her application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 22, 2013 (Tr. 21-31). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, she can occasionally lift/carry ten pounds, sit/stand two hours in an eight-hour workday and sit about six hours

in an eight-hour workday, all with normal breaks. Additionally, he determined that she was limited to simple, repetitive tasks and to relating to coworkers and supervisors only superficially, and that she cannot work with the public (Tr. 25). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, touch-up screener and addresser (Tr. 31).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate whether she meets Listing § 1.04A, (ii) by failing to properly assess her credibility, (iii) by failing to appropriately question the vocational expert at the administrative hearing, and (iv) by failing to properly evaluate the medical evidence and "other source" evidence in the record. The Court finds the claimant's fourth contention persuasive.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy to the right lower extremity, depression, and anxiety (Tr. 23). Relevant medical records reflect that the claimant underwent a discectomy at L4-5 in April 2004, and returned to work in a full duty capacity in August 2004 (Tr. 217, 229). She was repeatedly evaluated by Dr. Frank Tomacek in relation to a worker's compensation claim (Tr. 230-280). On March 25, 2005, Dr. Tomacek indicated that he had reviewed videos from 2004, which showed her attending sporting events, sitting on benches with no back support, lifting groceries, bending over the cart and carrying bags out of stores (Tr. 278). Dr. Tomacek stated that he still believed she needed a surgery at this point, but that she was not temporarily

totally disabled and could do light-duty work (Tr. 278). He continued, indicating that, given the medications prescribed for the claimant, some of her activities were unsurprising (Tr. 278). On September 6, 2005, she underwent a re-do bilateral L4-5 laminotomy, foraminotomy, and discectomy with posterior lumbar interbody fusion (Tr. 260, 262, 308, 407). The following month, Dr. Tomacek indicated that he considered her temporarily totally disabled and he expected her to remain so for two months. By January 2006, he noted she was back to work full time, full duty with no major restrictions, but in February 2006 she reported continued pain and he anticipated the potential need for hardware removal and fusion exploration (Tr. 257, 260). In April 2006, the claimant underwent abdominal surgery for an obstructed bowel, and he advised she should remain off work for the remainder of the school year but anticipated a full return to work after that (Tr. 252). By June 2006, he again considered her temporarily totally disabled due to continued low back pain that radiated to the right hip and buttock (Tr. 251, 281-282). On August 3, 2006, the claimant underwent a hardware removal procedure (Tr. 230, 246, 502). In October 2006, she then underwent a post-surgical repair of incisional abdominal hernia (Tr. 321). She continued to follow up with Dr. Tomacek and his staff, and on December 14, 2006, he evaluated the claimant again and stated that despite her multiple lumbar procedures, she had chronic pain which would require maintenance and management (Tr. 230). Additionally, he stated she could work in a light-duty job where she did not have to lift over fifteen pounds, she could sit up to four hours a day, stand two hours per day, and walk two hours per day; she needed to avoid operating heavy machinery, repetitive bending, crawling, kneeling, climbing, or

working overhead; and she could alternate sitting and standing as required (Tr. 231). He further recommended chronic pain management and vocational rehabilitation, but stated she might be hard to employ if she takes heavy narcotic medications (Tr. 231). He last saw the claimant in 2006.

The claimant also received treatment from Dr. Timothy G. Pettingell at Oklahoma Physical Medicine & Rehabilitation, PC. On January 7, 2007, he wrote that he had viewed surveillance videos of the claimant in which she was observed running errands and shopping, including carrying various shopping bags of unknown weight and reaching overhead to close the back door of her SUV (Tr. 315). He believed she was capable of gainful employment and could return to work with a twenty-five-pound weight restriction and working twelve hours per day with no sitting, standing, or walking restrictions (Tr. 315). On March 20, 2007, he noted she had chronic low back pain present with L4-5 fusion and right L5 radiculopathy. He believed she had reached maximum medical improvement and recommended moving from physical therapy to home exercise (Tr. 314).

The claimant continued to complain of back pain, and attempted to utilize a pain stimulator on two occasions (in 2008 and 2011), but both times were unsuccessful due to hardware problems and the pain stimulators had to be removed (Tr. 509, 522, 552, 664, 666).

From February 2006 through December 2011, the claimant was repeatedly evaluated by Dr. Richard A. Hastings, II, D.O. (Tr. 694-751). In October 2007, Dr. Hastings agreed with Dr. Trinidad that the claimant was temporarily totally disabled as a

result of her lumbosacral back injuries (Tr. 713). In 2008, he expressed concern that there had not been a differential diagnosis of the claimant and opined that there was a degree of speculation among physicians treating the claimant, and again asserted that she was temporarily totally disabled, and continued to hold this opinion through April 2009 (Tr. 717-720). There was then a break in his assessments until 2011. In December 2011, Dr. Hastings reviewed records dating back to 2004, noted she had limited range of motion of the back and sacroiliac joints, as well as positive straight leg raising tests (Tr. 747). He opined that she had experienced a change of condition for the worse, that she had permanent discogenic anatomical abnormalities, that multiple surgical procedures produced additional permanent anatomical abnormalities, and that she had weakness of both her lower extremities (Tr. 748-749). He then opined that she was temporarily totally disabled and that she had not reached maximum medical improvement (Tr. 749). Dr. Hastings again evaluated the claimant on March 30, 2012, and agreed with Dr. Anthony that opioid medication would not likely be effective for her, and stated she would require continuing ongoing pain management and continuing medical maintenance for neuropathic pain, and also stated that she had sustained a psychological change for the worse as a result of her physical injuries (Tr. 827).

On May 3, 2012, Dr. Dominic Losacco examined the claimant and concluded that she was temporarily totally disabled from her depressive disorder and panic disorder (Tr. 821). On March 27, 2013, Dr. Losacco completed a Mental Status Form indicating that the claimant's mental status showed a depressed mood, anxiety, pain, perplexed, and indecisive (Tr. 899). He indicated that she was well oriented but that her stress tolerance

was minimal and she had reduced decisionmaking (Tr. 899). He indicated that her prognosis was guarded, and that she was resistant and only partially responsive (Tr. 900). He believed she could remember, carry out, and comprehend simple instructions on an independent basis, but could not respond appropriately to work pressure, supervision, and co-workers (Tr. 900). His diagnoses were major depression, panic disorder with agoraphobia, and chronic pain (Tr. 900). On April 10, 2013, Dr. Losacco completed a mental RFC assessment, checking boxes to indicate that she had severe limitations (defined as 49% or more) in twelve areas, marked limitations (defined as 33-48%) in three areas, and mild limitations (less than 16%) in four areas (Tr. 897-898).

Dr. Thomas Craven saw the claimant in January and February of 2013. She complained of numbness and tingling in her arms and legs, and he assessed her with lumbar radiculitis and noted her status post surgery (Tr. 878). He stated that he did not see a surgical indication for her and that she had reached maximum medical improvement, and stated she could return to work full duty with no restrictions, stating "Please see the return to work form for complete details" but that form is not a part of this record (Tr. 878-882). Dr. Craven also noted that a 2013 MRI was within normal limits with healed fusion at L4-5 (Tr. 882). The impression of the MRI was transitional vertebral body at the lumbosacral junction designation L5, partially sacralized on the right with a pseudoarthrosis and lumbarized on the left as well as minor degenerative changes of the thoracolumbar intervertebral discs and no central canal stenosis or exiting nerve root compression (Tr. 883-884).

On July 19, 2011, Dr. Mohammed Quadeer examined the claimant, and upon exam her lumbo-sacral spine showed decreased range of motion with the presence of muscle spasms, negative straight leg raising tests, and a normal gait (Tr. 632, 637, 637). He assessed her with status post surgery of the lumbar spine, anxiety and depression, and degenerative disc disease of the lumbar spine and pain in right hip that was likely radiculopathy from the lower lumbar problem (Tr. 633).

On September 10, 2011, Dr. J. Marks-Snelling reviewed the claimant's record and concluded that she could perform the full range of light work (no manipulative or postural limitations) (Tr. 657). On June 20, 2012, Dr. James Metcalf again determined that the claimant could perform the full range of light work (Tr. 792-798).

In his written opinion, the ALJ summarized the claimant's testimony as well as some of the voluminous evidence contained in the medical record (Tr. 26-29). He noted her surgical history and worker's compensation video surveillance from 2006 and Dr. Pettingell's 2007 opinion as to her ability to return to work, as well as Dr. Hastings's opinion that she was temporarily totally disabled in 2011 (Tr. 26-27). He then cited Dr. Craven's opinion that the claimant could return to full duty work with no restrictions, failing to note the absence of the accompanying "return to work form," but noting that the Worker's Compensation Court did not find her permanently and totally disabled (Tr. 27). He then noted that Dr. Pettingell's 2007 finding regarding return to work was followed a month later by Dr. Tomacek's opinion she could return to light duty work and noted that Dr. Quadeer and Dr. Hastings were "more receptive to [the claimant's] complaints and pain allegations but were only consultative examiners. He then stated that Dr. Craven,

Dr. Pettingell, and Dr. Tomacek were treating physicians with more complete knowledge (Tr. 27-28). He gave Dr. Losacco's mental RFC assessment "not controlling weight" because he did not provide any "real insight" into how he arrived at his conclusion and did not meet the supportability requirement for treating physician opinions (Tr. 28-29). He noted several other source opinions in the record, simply summarizing two of them and only giving "some weight" to the third without explanation (Tr. 29). He then determined that the claimant was not disabled.

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give

specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis in step four, he failed to properly apply it to *each* of the claimant's treating physicians, instead only referring to this evaluation with regard to Dr. Losacco's opinion. The ALJ's entire "analysis" of the other opinions in the record stated that Dr. Craven, Dr. Pettingell, and Dr. Tomecek had "more complete knowledge of the claimant and her impairments" (Tr. 28). But a review of the record indicates that Dr. Tomecek last examined the claimant in 2006, Dr. Craven only saw the claimant twice in 2013, and Dr. Pettingell saw her from late 2006 through 2007. In contrast, Dr. Hastings regularly performed outpatient evaluations of the claimant from 2004 through 2009, and then again in 2011. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A

reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984). This is also problematic because it indicates that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments but focused on times when exams had more positive results. 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). Moreover, it is evident that the ALJ failed to properly evaluate all of the claimant's impairments in combination, despite evidence that the claimant's physical impairments had a long-term negative impact on her mental health. This failure to consider all her impairments—singly and in combination—was error at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'").

Finally, the ALJ erred in his evaluation of the three "other source" opinions submitted for the record. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources like the claimant's husband; her friend who was the mayor of Warner, Oklahoma, and her Oklahoma state representative who had known her for twenty years.

*See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence should be evaluated by considering the following factors: (i) nature and extent of the relationship, (ii) whether the evidence is consistent with other evidence, and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. The ALJ mentioned these opinions and gave some weight to her husband's Third Party Function Report without explanation, and simply summarized the statements from the other two without any analysis. He thus wholly failed to properly evaluate these opinions in accordance with the factors set out in SSR 06-03p. The ALJ's task in evaluating credibility of lay witness testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. *See Spicer v. Astrue*, 2010 WL 4176313, at *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). Notably, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective

complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony the proper analysis. Here, the ALJ wholly failed to apply this analysis to any of the three opinions in the record.

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**